# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JIYING SPENCER, on behalf of herself and
all others similarly situated,

  Plaintiff,

v.

MAZZARO'S ITALIAN MARKET, LLC;
and DOES 1 through 10, inclusive,

  Defendants.

Case No. _____

8:18-cv-01910-T-33-SPF

CLERK US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA FLORIDA
2018 AUG -3 AM 10: 28
FILED

## CLASS ACTION  COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiff, by her counsel of record, brings this action on her own behalf and on behalf of all others similarly situated, and alleges upon knowledge concerning each of her own respective acts and upon information and/or belief as to all other matters the following:



1

## **INTRODUCTION**

1.      Plaintiff on behalf of herself and all others similarly situated brings this action against MAZZARO'S ITALIAN MARKET, LLC, and DOES 1 through 10 (all named and DOE defendants collectively referred to as "Defendants") based on Defendants' violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §§ 1681 *et seq.*

2.      FACTA provides in relevant part that "**no person** that accepts credit cards or debit cards for the transaction of business **shall print more than the last 5 digits of the card number** . . . **upon any receipt provided to the cardholder** at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1) (emphasis added).

3.      The FACTA law gave merchants who accept credit and or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.  Although Defendants had up to three years to comply, Defendants willfully violated this law and failed to protect Plaintiff and others similarly situated against identity theft and credit and debit card fraud by printing more than the last 5 digits of the card number on receipts provided to credit card and/or debit card

cardholders transacting business with Defendants. More specifically, Defendants printed the first 6 digits and the last 4 digits of the credit and/or debit card number on credit and/or debit card receipts. This conduct is in direct violation of FACTA.

4.     Nor is Defendants' willful violation of FACTA a trifling matter. In the statement provided during his signing of FACTA in 2003, the President underscored the importance of the legislation in combating rampant identity theft:

> This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs. With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft.

5.     Courts have likewise emphasized the purpose of FACTA. For example, the Ninth Circuit emphasized that "[i]n fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) (quoting 149 Cong. Rec. 26,891 (2003) (statement of Sen. Shelby)).

6.     Similarly, the Seventh Circuit explained that "[i]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it." *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014).

7.     Moreover, despite many defendants' attempts to label FACTA violations as "technical," the Ninth Circuit has squarely rejected such arguments and held that such a violation "is not merely 'technical.'" *Bateman*, 623 F.3d at 714 and n.4.  Plaintiff's situation is exactly the scenario Congress sought to avoid by passing FACTA.

8.     Further, by printing the first 6 and last 4 digits of the card number on the receipts provided to Plaintiff and other credit card and/or debit card cardholders transacting business with Defendants, Defendants have harmed Plaintiff and the Class by exposing them to at least an increased and material risk of identity theft and credit and or debit card fraud.

9.     For example, the first 6 and last 4 digits of the card number either alone and/or in conjunction with other information can be used to bolster the credibility of a criminal who is making pretext calls to a card holder or engaging in e-mail phishing scams in order to learn other personal financial information, such as bank account numbers, social security numbers, date of birth, employment data, etc.  Access to such information not only allows for the misuse of card information but also allows criminals to potentially obtain additional credit cards, obtain loans for vehicles, obtain home mortgages, obtain

4

a passport in the consumer's name, and other similarly serious fraudulent acts that can cause serious harm to the consumer's financial and personal life.

10. As the Unites States Government explained in its brief in support of FACTA's truncation provisions filed in *Papazian v. Burberry Ltd.*, 2:07-cv-01479-GPS-RZ (C.D. Cal.): "Congress' decision to protect both card numbers and expiration dates from inadvertent disclosure through discarded sales receipts, as many states had already done, directly serves the interest Congress sought to protect" particularly since "*Thieves might piece together (or 'pick off,' in the words* of Congress) different bits of information from different sources." See Exhibit 3 at pp. 13-16; see also intervention by United States in *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1307 (11th Cir. 2009).

11. Indeed, the fact that thieves can piece together card information was recently demonstrated by computer scientists who released a study showing how "even starting with no details at all other than the first six digits [of a card number] a hacker can obtain the three essential pieces of information to make an online purchase within as little as six seconds." See Exhibit 1 at p. 2: Six Seconds To Hack A Credit Card (http://www.ncl.ac.uk/press/news/2016/12/cyberattack/). These computer scientists' study showed that starting with nothing more than the first 6 digits of

a card number, and "By automatically and systematically generating different variations of the cards security data and firing it at multiple websites, within seconds hackers are able to get a 'hit' and verify all the necessary security data."   Exhibit 1 at p. 2; and Exhibit 2: Does The Online Card Payment Landscape Unwittingly Facilitate Fraud?, Mohammed Aamir Ali, et al., (http://eprint.ncl.ac.uk/file_store/production/230123/19180242-D02E-47AC-BDB3-73C22D6E1FDB.pdf).   "Investigators believe this guessing attack method is likely to have been used in the recent Tesco cyberattack which defrauded customers of £2.5m." Exhibit 1 at p. 2.

12.   Adding to the complexity of identity theft and fraud is the fact that victims may not know that they have a problem until long, sometimes years, after the crime occurs.  Consumers who suspect that their personal information has been disclosed improperly may spend money and time enrolling in a credit monitoring service and watching and reviewing their credit information.  That effort may allow the consumers to learn of the theft or fraud sooner rather than later, but it does not prevent the identity theft or fraud from occurring or repair the resulting financial and personal damage.

13.   Thus, a violation of FACTA's prohibition against printing excess digits of a card number presents a significant risk of the exact harm that

Congress intended to prevent—the display of card information that could be exploited by an identity thief.

14.     The first 6 digits of a credit card number are significant for a number of other reasons.   For example, the credit card industry uses an algorithm (hereinafter referred to as "Card Industry Algorithm") to check the validity of a credit card number.   The Card Industry Algorithm assesses the digits of a credit card number (including the first 6 digits) to verify whether the digits used and their particular sequence result in a valid card number.   If a number in an otherwise valid credit card number is changed (for example the first digit 4 is changed to a 5 or some other digit) the Card Industry Algorithm will confirm that it is not a valid card number.   Similarly if a digit in a credit card number is transposed with any other different digit (for example, suppose the first digit of the card number is a 4 and it is transposed with one of the last four digits of the card number which is a 6) the Card Industry Algorithm will confirm that it is not a valid card number.   The first 6 digits of a credit card number are thus critically important to ensure that that the Card Industry Algorithm functions correctly and acts as a safeguard to prevent against the misuse of card information.

15.    Nor is this harm made harmless when the risk fails to materialize because no potential identity thief actually sees the receipt.    Even in this situation, the consumer (such as Plaintiff and Class members) must take additional steps to ensure the safety of his or her identity; he or she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later. The additional inconvenience that a consumer must undertake in order to secure their own rights, when a statute places that burden on Defendants, is surely a concrete harm.    As the Seventh Circuit observed, this is why statutory damages exist.    Some harms—'a modest concern about privacy, a slight chance that information would leak out and lead to identity theft'—are not easy to quantify, at least in any appreciable dollar amount. See *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).    But even if they give rise to no actual *damages*, they are still actual *harms*.    "Allowing consumers to recover statutory damages furthers [the congressional purpose of keeping information out of the hands of identity thieves] by deterring *businesses* from willfully making consumer financial data available, even where no actual harm results." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010).

8

16.    Additionally, to the extent Defendants retained a copy of Plaintiff's receipt(s) and/or the information contained therein (such as the first 6 and last 4 digits of the card number), such provides an additional access point for the information to persons other than Plaintiff, and thereby further increases the risk of harm to Plaintiff and other customers similarly situated.

17.    In sum, Defendants have violated FACTA, and have thereby placed the security of Plaintiff and similarly situated Class members at material risk.    As a result of Defendants' unlawful practice of violating FACTA's provisions intended to safeguard against identity theft and credit and debit card fraud, Plaintiff seeks, on behalf of herself and the Class, statutory damages, punitive damages, costs and attorney fees, all of which are expressly made available by statute, 15 U.S.C. §§ 1681 *et seq.*

## JURISDICTION AND VENUE

18.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

19.    Plaintiff's claims asserted herein arose in this judicial district and all Defendants do business in and reside in this judicial district.

20.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that defendant MAZZARO'S ITALIAN MARKET, LLC has done and continue to do business, and intentionally avail themselves of the markets within this district, it owns, manages, maintains and or operates one or more physical retail locations within this district, and this is a class action case in which a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

## PARTIES

21.     Plaintiff, JIYING SPENCER, is and at all times relevant hereto was a resident of the State of Florida.

22.     Defendant MAZZARO'S ITALIAN MARKET, LLC is a limited liability company organized and existing under the laws of the State of Florida.

23.     At all times mentioned in this Complaint, Defendants and each of them were the agents, employees, joint venturer, and or partners of each other and were acting within the course and scope of such agency, employment, joint venturer and or partnership relationship and or each of the Defendants ratified and or authorized the conduct of each of the other Defendants.

10

24.     Plaintiff does not know the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and/or believes that each of the Doe defendants was in some manner legally responsible for the wrongful and unlawful conduct and harm alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this class action on behalf of herself and all other persons similarly situated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

26.     The Class which Plaintiff seeks to represent is defined as:

All consumers to whom Defendants, within two years from the date of filing this action, provided an electronically printed receipt at the point of a sale or transaction at any of Defendants' physical store locations in the United States, on which receipt Defendants

printed more than the last 5 digits of the consumer's credit card or debit card (the "Class").[1]

27.     Excluded from the Class are Defendants and each of their directors, officers, and employees. Also excluded from the Class are any justice, judge, or magistrate judge assigned to this action or who presides over any proceeding concerning this action, and any such justice's, judge's, or magistrate judge's spouse, or a person within the third degree of relationship to any of them, or the spouse of such a person.

28.     <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)): The Class is so numerous that joinder of all individual members in one action would be impracticable. The disposition of their claims through this Class action will benefit both the parties and this Court.

29.     Plaintiff believes and thereon alleges that there are, at a minimum, thousands (*i.e.*, two thousand or more) of members that comprise the Class.

30.     The exact size of the Class is ascertainable through Defendants' records, including but not limited to Defendants' sales and transaction records.

31.     Members of the Class may be notified of the pendency of this action by techniques and forms commonly used in Class actions, such as by

---

[1] Plaintiff reserves the right to amend or otherwise modify the Class definition and/or add sub-classes.

12

published notice, e-mail notice, website notice, and/or first-Class mail, or combinations thereof, or by other methods suitable to this Class and deemed necessary and or appropriate by the Court.

32.    Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of the entire Class. The claims of Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful conduct.

33.    Plaintiff and members of the Class were each customers of Defendants, each having made a purchase or transacted other business with Defendants within two years from the date of filing this action, using a credit or debit card. At the point of such sale or transaction with Plaintiff and members of the Class, Defendants provided to Plaintiff and each member of the Class a receipt in violation of 15 U.S.C. §1681c(g) (*i.e.*, a receipt on which is printed more than the last 5 digits of the credit card or debit card).

34.    Common Questions of Fact and Law (Fed. R. Civ. P. 23(a)(2) and (b)(3)): There are a well-defined community of interest and common questions of fact and law affecting the members of the Class.

35.    The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

(a)    Whether Defendants' conduct of providing Plaintiff and the Class with sales or transaction receipts whereon Defendants printed more than the last 5 digits of the card violated the FACTA, 15 U.S.C. §§ 1681 *et seq.*;

(b)    Whether Defendants' conduct was willful; and

(c)    Whether Plaintiff and the Class are entitled to statutory damages, punitive damages, costs, and or attorney fees for Defendants' acts and conduct.

36.    <u>Adequacy of Representation</u> (Fed. R. Civ. P. 23(a)(4)): Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class which Plaintiff seeks to represent. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class and does not have any interests antagonistic to the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

37.    <u>Superiority</u> (Fed. R. Civ. P. 23(b)(1) and 23(b)(3)): A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be and if awarded to the Class are likely to be substantial, the actual damages suffered by individual members of the Class are relatively small. As a result, the expense

14

and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation already commenced by or against any member of the Class concerning Defendants' printing of more than the last 5 digits of the card on customer receipts. The likelihood of individual Class members prosecuting separate claims is remote. Individualized litigation would also increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT ONE

### For Violation of 15 U.S.C. §§ 1681 *et seq.*

### (On Behalf of Plaintiff and the Class as against Defendants)

38.    Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

39.    Plaintiff asserts this claim on behalf of herself and the Class against Defendants.

40.    Title 15 U.S.C. § 1681c(g)(1) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

41.    By its express terms, 15 U.S.C. § 1681c(g)(1) applies to "any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions" after December 3, 2006. 15 U.S.C. § 1681c(g)(3).

42.    Defendants transact business in the United States and accept credit cards and debit cards in the course of transacting business with persons such as Plaintiff and members of the Class.  In transacting such business, Defendants use cash registers and or other machines or devices that electronically print receipts for credit card and debit card transactions.

43.    After December 3, 2006, and within two years from the date of filing this action, Defendants, at the point of a sale or transaction with Plaintiff

JIYING SPENCER, provided Plaintiff JIYING SPENCER with one or more electronically printed receipts on each of which Defendants printed the first 6 and the last 4 digits of her card number.

44.    After December 3, 2006, and within two years from the date of filing this action, Defendants, at the point of a sale or transaction with members of the Class, provided each member of the Class with one or more electronically printed receipts on each of which Defendants printed, for each respective Class member, the first 6 and last 4 digits of the card number.

45.    As set forth above, FACTA was enacted in 2003 and gave merchants who accept credit and or debit cards up to December 4, 2006 to comply with its requirements.

46.    Defendants knew of and were well informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates.

47.    For example, but without limitation, several years ago, VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express and JCB), companies that sell cash register and other devices for the processing of credit or debit card

payments, companies that sell software to operate payment card devices, companies that maintain and repair hardware or software used to process payment card transactions, and other entities informed Defendants about FACTA, including its specific requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates, and Defendants' need to comply with same.

48.    Other entities, including but not limited to Defendants' payment card processor (also known as the acquirer, merchant bank, or acquiring bank) which processes credit and debit card payments for transactions occurring at Defendants' stores, likewise informed Defendants about FACTA, including its specific requirements concerning the truncation of credit and debit card numbers and prohibition on the printing of expiration dates, and Defendants' need to comply with same.

49.    In addition, many companies such as VISA and MasterCard devised and implemented policies well before the operative date of FACTA's requirements, wherein such policies VISA, MasterCard and others required Defendants (and informed Defendants of the requirements) to truncate credit and debit card numbers and prevent the printing of expiration dates on receipts.

50.     In addition, these companies also publically announced some of these requirements.  For example, on March 6, 2003, VISA USA's CEO, Carl Pascarella, held a press conference on Capitol Hill with Senators Dianne Feinstein, Judd Gregg, Jon Corzine and Patrick Leahy, and publically announced Visa USA's new truncation policy to protect consumers from identity theft.  At the March 2003 press conference, Mr. Pascarella explained, as follows:

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers. **Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.** The card's expiration date will be eliminated from receipts altogether.  This is an added security measure for consumers that doesn't require any action by the cardholder.  We are proud to be the first payments brand to announce such a move to protect cardholders' identities by restricting access to their account information on receipts.
> **The first phase of this new policy goes into effect July 1, 2003 for all new terminals.** I would like to add, however, that even before this policy goes into effect, **many merchants have already voluntarily begun truncating receipts, thanks to groundwork that we began together several years ago.**
> Receipt truncation is good news for consumers, and bad news for identity thieves. Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers, addresses, Social Security numbers, and more. Visa's new policy will protect consumers by limiting the information these thieves can access. (Emphasis added).

51.    Moreover, the Government, through the Federal Trade Commission ("FTC"), provided notice of FACTA's requirements to businesses on no less than three separate occasions in 2007, reminding them of the requirement to truncate credit and debit card information on receipts. Defendants were informed of and knew about these notices from the FTC.  In one such notice, entitled "FTC Business Alert" "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," and dated May 2007, the FTC reminded businesses, among other things, of the following:

> What's on the credit and debit card receipts you give your customers? The Federal Trade Commission (FTC), the nation's consumer protection agency, says it's time for companies to check their receipts and make sure they're complying with a law that's been in effect for all businesses since December 1, 2006.
> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten — or truncate — the account information. **You may include no more than the last five digits of the card number**, and you must delete the card's expiration date.  For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:
> ACCT:***********12345
> EXP:****
> Why is it important for businesses to make sure they're complying with this law?  Credit card numbers on sales receipts are a "golden ticket" for fraudsters and identity thieves. Savvy businesses appreciate the importance of protecting their customers

— and themselves — from credit card crime.        (Emphasis added).

52.    Defendants' violations of FACTA were not accidental oversights. The electronic printing of more than the last 5 digits of a card on a customer receipt does not occur by accident. Electronic receipt printing equipment must be intentionally programmed or otherwise intentionally configured to print more than the last 5 digits of a card on a customer receipt.

53.    Thus, despite knowing and being repeatedly informed about FACTA and the importance of truncating credit and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had over three years to comply with FACTA's requirements, Defendants knowingly willfully, intentionally, and recklessly violated FACTA's requirements by, *inter alia*, printing the first 6 and last 4 digits of the card upon the receipts provided to the credit card and/or debit card cardholders with whom they transact business.

54.    Many of Defendants' business peers and competitors brought their credit and debit card receipt printing processes in compliance with FACTA's requirements by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and

21

or the expiration date upon the receipts provided to the cardholders. Defendants could have readily done the same.

55.    Instead, Defendants knowingly, willfully, intentionally, and recklessly disregarded FACTA's requirements and used cash registers and or other machines or devices that printed receipts in violation of FACTA.

56.    Defendant knowingly, willfully, intentionally, and recklessly violated FACTA in conscious disregard of the rights of Plaintiff and the Class.

57.    Defendants have also harmed Plaintiff and the Class by exposing them to at least an increased risk of identity theft and debit card fraud.

58.    As a result of Defendants' willful violations of FACTA, Defendants are liable to Plaintiff and each member of the Class in the statutory damage amount of "not less than $100 and not more than $1,000" for each violation. 15 U.S.C. § 1681n.

## **PRAYER FOR RELIEF**

59.    WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

A.   An order certifying the Class and appointing Plaintiff as the representative of the Class, and appointing counsel of record for Plaintiff as counsel for the Class;

B.   An award to Plaintiff and the Class of statutory damages pursuant to 15 U.S.C. § 1681n for Defendants' willful violations (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

C.   An award to Plaintiff and the Class of punitive damages pursuant to 15 U.S.C. § 1681n (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

D.   Payment of costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. § 1681n;

E.   Payment of reasonable attorneys' fees pursuant to, *inter alia*, 15 U.S.C. § 1681n; and

F.   For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

23

Respectfully submitted,

Date:   August 1, 2018

/s/ Dewitt M. Lovelace        .

Dewitt M. Lovelace, Trial Counsel
Florida Bar Identification No. 0872326
LOVELACE AND ASSOCIATES, PA
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: 850.837.6020
Facsimile: 850.837.4093
dml@lovelacelaw.com

Chant Yedalian (to apply *pro hac vice*)
California Bar No. 222325
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Telephone: 877.574.7100
Facsimile: 877.574.9411
Email: chant@chant.mobi

Brian K. Herrington (to apply *pro hac vice*)
Mississippi Bar No. 10204
HERRINGTON LAW, PA
1520 N. State Street
Jackson, MS 39202
Telephone: 601.208.0013
Facsimile: 601.235.9947
Email: brian@herringtonlawpa.com

**COUNSEL FOR PLAINTIFF
AND THE PROPOSED CLASS**

24